**In re: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION**

**This Document Relates To:
All Remaining Cases**

**Nos. MDL 1358, 00 CIV 1898(SAS).**

United States District Court,
S.D. New York.

Oct. 16, 2001.

Morris A. Ratner, Esq., Lieff, Cabraser, Heimann & Bernstein, LLP, New York City, for Plaintiffs.

Peter Sacripanti, Esq., McDermott, Will & Emery, New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

SCHEINDLIN, District Judge.

### I. INTRODUCTION [1]

The plaintiffs in this consolidated multi-district litigation,[2] private well-owners, essentially allege that defendants, petroleum companies doing business throughout the United States,[3] knowingly caused the widespread contamination of groundwater as a result of their use of a gasoline additive known as methyl tertiary butyl ether— commonly referred to as MTBE. In January 2001, pursuant to a Court Order, the plaintiffs filed a Master Complaint,[4] asserting six state law claims against the defendants.[5] These claims, which are premised on defendants' use of MTBE, include: (1) strict liability for design defect; (2) negligence; (3) failure to warn; (4) deceptive business acts and practices in violation of section 349 of New York's General Business Law ("GBL § 349");[6] (5) public nuisance; and (6) conspiracy to market an unsafe product.

▮ Defendants moved to dismiss plaintiffs' state law claims, asserting as one principal ground that these claims were barred by the doctrine of conflict preemption, as articulated by the Supreme Court in *Geier v. Am. Honda Motor Co., Inc.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). Specifically, defendants argued that MTBE was a "federally approved" oxygenate that Congress intended and understood would be available as a means of complying with the oxygenate requirements set forth in section 211 of the Clean Air Act ("CAA"), 42 U.S.C. § 7545, and any finding of liability based upon defendants' use of MTBE would stand as an obstacle to the accomplishment and execution of the goals articulated in the CAA. In the August 20 Opinion, this Court denied defendants' motions to dismiss plaintiffs' claims on the ground of conflict preemption. *See In re MTBE,* 175 F.Supp.2d at 614–15, 623.

On September 4, 2001, defendants moved for reconsideration of that portion of the August 20 Opinion denying defendants' motion to dismiss plaintiffs' state law claims on the ground of conflict preemption. In the alternative, defendants

---

1. The details of this dispute are set forth in *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* 175 F.Supp.2d 596–606 (S.D.N.Y.2001) (the "August 20 Opinion"). Familiarity with the August 20 Opinion is assumed.

2. The MDL actions currently before this Court are: *Berisha and O'Brien v. Amerada Hess Corp., et al.,* No. 00 Civ. 1898; *England v. Atlantic Richfield Co., et al.,* No. 00 Civ. 7729; *Young v. Exxon Mobil Corp., et al.,* No. 01 Civ. 704; and *Berrian v. Amerada Hess Corp., et al.,* No. 01 Civ. 1076. *Berisha* is the only suit that is not a putative class action.

3. The named defendants include: Amerada Hess Corp., Atlantic Richfield Co., BP Amoco Corp., BP Products North America, Inc., Chevron U.S.A., Inc., CITGO Petroleum Corp., Conoco Inc., El Paso CGP Co., Equilon Enterprises, LLC, Exxon Mobil Corp., Motiva Enterprises, LLC, Phillips Petroleum Co., Shell Oil Co., Shell Oil Products Co., Sunoco, Inc. (R & M), Texaco Refining and Marketing, Inc., Tosco Corp., United Refining Co. and Valero Marketing and Supply Co.

4. Plaintiffs were directed to file a Master Complaint setting forth all allegations and causes of action asserted against the defendants. The plaintiffs in each individual action then filed amended complaints adopting the allegations and causes of action applicable to their individual case.

5. Plaintiffs also brought a federal claim under the Toxic Substances Control Act ("TSCA"), 15 U.S.C. §§ 2601 *et seq.*

6. This cause of action has been adopted only by the *Berisha* and *Berrian* plaintiffs.

sought an Order pursuant to 28 U.S.C. § 1292(b) certifying the following question for interlocutory review:

> Whether statutory or common law causes of action based on defendants' use of methyl tertiary butyl ether ("MTBE") in gasoline pursuant to Section 211 of the federal Clean Air Act are conflict preempted?

Memorandum in Support of Defendants' Joint Motion for Reconsideration or, to Certify Question for Interlocutory Review at 2.

On September 7, 2001, this Court denied defendants' motion for reconsideration, finding that no controlling decisions or factual matters were overlooked that would have altered the decision. *See In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* MDL No. 1358, 2001 WL 1042051, at *2 (S.D.N.Y. Sept. 7, 2001). For the reasons stated below, defendants' request for certification is now denied.

## II. DISCUSSION

### A. The Standard for § 1292(b) Certification

■ It is a "basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda, Ltd.,* 101 F.3d 863, 865 (2d Cir.1996) (finding certification inappropriate where there had been no discovery or a hearing on a question of personal jurisdiction). However, a court, in its discretion, may certify an interlocutory order for appeal if the order "[1] involves a *controlling question of law* [2] as to which there is *substantial ground for difference of opinion* and [3] that an immediate appeal from the order may *materially advance*

*the ultimate termination of the litigation."* 28 U.S.C. § 1292(b) (emphasis added).

■ When considering requests for certification, district courts must carefully evaluate whether each of the above conditions are met. *See Wausau Bus. Ins. Co. v. Turner Constr. Co.,* 151 F.Supp.2d 488, 491 (S.D.N.Y.2001) (denying motion for certification where defendant could not demonstrate substantial grounds for difference of opinion as to controlling questions of law). The Second Circuit has urged courts "to exercise great care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.,* 964 F.2d 85, 89 (2d Cir.1992). Section 1292(b) must be construed narrowly, *see Cromer Fin. Ltd. v. Berger,* Nos. 00 Civ. 2284, 00 Civ. 2498, 2001 WL 935475, at *1 (S.D.N.Y. Aug. 16, 2001) (denying defendants' motions for certification because the issues were neither controlling nor presented substantial grounds for difference of opinion), and "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.' " *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 25 (2d Cir.1990) (*quoting Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). Indeed, even where the three legislative criteria of section 1292(b) appear to be met, district courts have "unfettered discretion to deny certification" if other factors counsel against it. *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.,* 71 F.Supp.2d 139, 162–163 (E.D.N.Y.1999) (assuming the statutory criteria were met but nonetheless denying certification).

Whether plaintiffs' state law claims are conflict preempted by section 211 of the Clean Air Act ("CAA") is clearly a "controlling question of law." [7] Thus, to deter-

---

7. "In determining whether a controlling question of law exists the district court should

mine whether certification should be granted, the Court must decide (1) if there is a substantial ground for difference of opinion as to whether state causes of actions such as those asserted by the plaintiffs are conflict preempted; (2) whether an immediate appeal would materially advance the ultimate termination of this action; and (3) whether in deciding how to exercise its discretion other factors counsel against certification.

## 1. Substantial Ground for Difference of Opinion

In the August 20 Opinion, this Court denied defendants' motions to dismiss plaintiffs' state law claims on the grounds that they were conflict preempted by section 211 of the CAA. *See In re: MTBE*, 175 F.Supp.2d at 614–15, 623. Although the reasoning for this decision will not be repeated, this Court essentially held that section 211 of the CAA set a minimum oxygen requirement; Congress did not mandate the use of MTBE and unlike the situation in *Geier*, Congress did not deliberately seek to maintain and make available a particular "suite of oxygenates" to meet the oxygen requirement; and whether there are or were practicable alterna-

tives to using MTBE was a question of fact that could not be decided on a motion to dismiss. *See id.* Citing three unpublished decisions—two from a lower state court in California and one from a federal district court in the District of New Jersey—defendants argue that there is a substantial ground for difference of opinion with respect to this issue.[8]

After reviewing defendants' arguments, as well as the three unpublished decisions, this Court does not find that there is a substantial ground for difference of opinion as to this issue. Neither disagreement outside this Circuit, *see SEC v. Credit Bancorp, Ltd.*, 103 F.Supp.2d 223, 227 (S.D.N.Y.2000), nor the mere presence of a disputed issue that is a question of first impression in this Circuit demonstrate a substantial ground for a difference of opinion. *See Flor v. BOT Fin. Corp.*, 79 F.3d 281, 284 (2d Cir.1996). While deciding the conflict preemption issue was not easy, section 1292(b) is not intended to be a "vehicle to provide early review of difficult rulings in hard cases.'" *Primavera*, 139 F.Supp.2d at 570 (citation omitted). Moreover, this Court's conclusion is supported by other courts, including a federal district court in this Circuit.[9] As such, I find

---

consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *Primavera Familienstifung v. Askin*, 139 F.Supp.2d 567, 570 (S.D.N.Y.2001). Plaintiffs do not argue that the question presented here is not a controlling question of law.

8. *See Holten v. Chevron U.S.A.*, No. 00–4703 (D.N.J. July 10, 2001) (dismissing plaintiff's strict liability claims in a six page Memorandum and Order upon a finding that "Congress required that gasoline include an oxygenate and specifically designated that MTBE would be one of the most common and effective

oxygenates."); *Kubas v. Unocal Corp.*, No. BC 191876 (Cal. Sup.Ct. L.A. County Aug. 23, 2001) (finding plaintiffs' state law causes of action for negligence and strict products liability to be conflict preempted by section 211 of the CAA); *Hixon v. Unocal Corp.*, No. BC 195295 (Cal. Sup.Ct. L.A. County Aug. 23, 2001) (a two-page Order issued the same day as *Kubas* and adopting its holding).

9. *See Oxygenated Fuels Assoc. v. Pataki*, 2001 WL 958793, at *7–9, 158 F.Supp.2d 248, 258–60 (N.D.N.Y.2001); *see also Oxygenated Fuels Assoc. v. Davis*, 163 F.Supp.2d 1182 (E.D.Cal. 2001) (pagination unavailable) (stating that the Clean Air Act "neither requires nor forbids the use of any particular oxygenate. Its 'goal' is to assure a particular oxygen content

there is no substantial difference of opinion warranting an "exception to the general policy against piecemeal appellate review embodied in the final judgment rule." *SEC,* 103 F.Supp.2d at 227.

### 2. Advancing the Ultimate Termination of this Action

■ Because I have found that no substantial question exists, whether the ultimate termination of this action would be advanced by certification need not be considered. However, it should be noted that certification is inappropriate where it is unclear whether disposition of the certified issue would advance the ultimate termination of the case. *See Westwood,* 964 F.2d at 88 (expressing disapproval of section 1292(b) certification where it was "not clear" that disposition of certified issues would materially advance ultimate determination of the case). Here, a substantial question exists as to whether a finding of conflict preemption would eliminate plaintiffs' state law claims of public nuisance, failure to warn, and violation of the GBL.

### B. Other Factors

■ Even assuming that the three statutory criteria were met, other factors favor the exercise of discretion against certification. As discussed in *Nat'l Asbestos,* 71 F.Supp.2d at 163, in order to determine whether certification is an efficient use of judicial resources, the district judge should consider:

(1) the time an appeal would likely take; (2) the need for a stay pending appeal and the effect on the litigation, including discovery, that would result from a stay; (3) the probability of reversal on appeal; (4) the effect of a reversal on the remaining claims; (5) the benefit of further factual development and a complete record on appeal, particularly in rapidly developing or unsettled areas of the law; and (6) the probability that other issues may moot the need for the interlocutory appeal.

*Id.*

The consolidated cases before this Court involve an essential public right, *i.e.,* the right to water free from contamination, and effect a great number of people. It is important that these actions move forward in a timely and efficient manner. More likely than not, an interlocutory appeal would interfere with discovery, which is progressing well.[10] *Cf. id.* at 167 (comparing discovery in mass tort cases to a moving oil tanker—"[t]o start both must overcome inertia, but once underway neither is amenable to sudden stops or changes in direction."). In addition, further factual development would be beneficial, especially with respect to the dangers associated with MTBE, defendants' knowledge of any such dangers, and whether there are or were "practicable" alternatives to MTBE available to the defendants to meet the oxygenate requirements set forth in section 211 of the CAA.[11] Moreover, as stated

[and] [i]t would require a far greater showing on OFA's part for the court to invalidate the State's enactment of a measure taken under its police powers to protect the environment and the public health.").

10. Pursuant to section 1292(b), an interlocutory appeal "shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). While defendants did not request a stay at this time, if the

Court had decided to grant certification, there can be little doubt that at some point a stay would have been requested.

11. If after discovery it is demonstrated that there are or were no "practicable" alternatives to MTBE available to meet the oxygenate requirements set forth in section 211 of the CAA, the conflict preemption issue may indeed be revisited on summary judgment.

above, it is not clear that an interlocutory appeal would eliminate all of plaintiffs' state law claims—leaving doubt as to whether such an appeal would advance the ultimate termination of these cases.

## III. CONCLUSION

For the reasons stated above, defendants' request for certification for interlocutory review pursuant to § 1292(b) is denied. Liaison Counsel are directed to circulate this Memorandum Decision and Order to their respective co-counsel.

SO ORDERED.